## CAMPBELL v. HULETT.
### Civ. No. 2274.

District Court, N. D. Texas,
Dallas Division.

Feb. 24, 1947.

Turner, Rodgers & Winn, of Dallas, Tex., for plaintiff.

Lasseter, Spruiell, Lowry, Potter & Lasater, of Tyler, Tex., and Robinson & Oden, of Altus, Okl., for defendant.

ATWELL, District Judge.

This suit grows out of a controversy centering around a contract to sell a 4,000-acre ranch in Leon County, Texas, in 1945. The contract is in writing and requires the submission of an abstract, time to pass upon that abstract, remedial time to cure any defects that might be found, and forfeit money placed in escrow.

Its development down to the present moment reflects some of the shades, shadows and sunshine of man's efforts to get.

I find that the abstracts were furnished in time and that the number of acres was found to be about 300 less than what the plaintiff thought he owned, and that good title was in him to that which he had, and that the controversy grew out of the mineral reservation right which was asserted and recognized in the contract. The defendant contends that the plaintiff did not have sufficient rights to mineral interests to convey the aggregate which the defendant felt was due him under the contract. The defendant objected to going forward with the trade because the plaintiff did not have one-half. The plaintiff contended that he had about 62 percent.

In Texas, oil and gas in place are recognized as real estate. Probably that conclusion is wise, since a pool of oil, or, a lake of water, or, a gas pocket, plays the part of dirt and rock in supporting the surrounding terrain.

Texas also has its peculiar shadings with reference to royalty interests and retention of mineral rights. Each of those appellate Texas court cases, however, has its own shadings so that the riddle is not very easily answered as to what the general doctrine is until all of the facts are placed under the light. Academically, mineral rights are easily calculated in simple fractions, of larger denominators than numerators, and when reduced to a common denominator, is a fairly simple operation.

Yet, with this learning, there continued a difference between the attorneys for the plaintiff and defendant for something over a year, with a rather extensive exchange of views by letter and telegram. There were also offers and counter-offers for settlement. The minds of the parties never did satisfactorily reach any conclusion with reference to such settlement. The plaintiff finally offered to transfer the land as it was, he to have all that was over 50 percent, whether royalty interest, or, straight oil and gas, or, other mineral interests. The defendant

finally reached the point of making a counter-proposition to the effect that he would take it "as is," without any figures as to amounts, and without any retained interest by the plaintiff.

In the meantime, the oil fraternity became slightly more interested in the plaintiff's land and sought to buy leases. The plaintiff did not think that he had a right to make any sales, and the outstanding contract for the sale of the entire property made it questionable as to whether any sale could go through.

Interested with the defendant was a silent partner by the name of Stewart who was an oil man and who was putting up a large part of the consideration for the purchase from the plaintiff.

Upon finishing the testimony, I find that the evident interest of the defendant for a larger mineral interest than the plaintiff's title papers seemed to indicate that he, the plaintiff, had, that the defendant is attempting to depreciate the value of the land as potential oil, or, gas, or, mineral territory. He placed testimony on the stand which he thought would substantiate a position that the land could not be so considered, and, yet, his effort for a year has been to try to get a larger interest from the plaintiff than originally contracted for.

So, I again say that we find some of the shades and shadows of life in this suit.

Simplifying, and as a conclusion of law, after finding the foregoing statements as facts, this is merely an effort on the part of the plaintiff to remove this overhanging contract cloud from his title. He tenders into court the money which is in escrow. He meets the cross-action of the defendant and the defense presented by the defendant, with testimony tending to show that the contract does cloud his title so that he has the right of removal. The defendant, in destroying his own consistency, attempts to defeat such "cloud removal" process by attempting to show that the land really has no mineral value.

Clearly and unmistakably, there has been no meeting of the minds, and, still more clearly, and still more unmistakably, the plaintiff is entitled to have this contract of sale cancelled, and the cloud removed, and to go acquitted of the cross-action asserted by the defendant which calls for a specific performance.